# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Case No. 0:16-CV-62328-GAYLES

BLUNT WRAP U.S.A., INC.,

    Plaintiff,

v.

GRABBA-LEAF, LLC,

    Defendant.

_____/

## ORDER ON CLAIM CONSTRUCTION

**THIS CAUSE** comes before the Court for claim construction of the patents forming the basis of the instant infringement action. The parties' proposed claim construction appears in Plaintiff's Motion for Summary Judgment and in the Alternative for Partial Summary Judgment on the Issues of Patent Validity and Infringement [ECF No. 45], Defendant, Grabba Leaf, LLC's Response to Claim Construction Offered as Part of Plaintiff's Motion for Summary Judgment [ECF No. 78], and Plaintiff's Reply in Support of Claim Construction [ECF No. 79]. In addition, the Court held an evidentiary Markman Hearing on December 13, 2017.

## BACKGROUND

Plaintiff Blunt Wrap U.S.A., Inc. ("Plaintiff") brings this action against Defendant Grabba-Leaf, LLC ("Defendant") for infringement of seven patents issued by the United States Patent and Trademark Office ("PTO"), nos. 7,571,730 (the "'730 Patent"), 7,717,119 (the "'119 Patent"), 7,987,858 (the "'858 Patent"), 8,066,012 (the "'012 Patent"), 8,578,944 (the "'944

Patent"), 8,783,266 (the "'266 Patent"), and 9,161,568 (the "'568 Patent") (collectively, the "Patents"). [ECF No. 14].

The Patents are part of a single "family" of patents owned by Plaintiff for improved "roll-your-own" tobacco products, and methods of making the same. According to the Patents, previously existing roll-your-own methods required a consumer "to be skillful in the rolling of cigars, that is to have a certain finger dexterity, which would allow him to make the cigar shell without crushing the tobacco leaves." *See, e.g.*, '730 Pat., Col. 1, 62–65. This causes inexperienced people to "become frustrated when the finished product collapses because the cigar was not properly rolled." *Id*. The invention in the Patents is described as improving on that state of the art by "eliminating some steps in the making of a 'roll-your-own' tobacco product." Pats., Abstract.

On August 24, 2017, Plaintiff filed a Motion for Summary Judgment and in the Alternative for Partial Summary Judgment on the Issues of Patent Validity and Infringement. [ECF No. 45]. In this Motion, Plaintiff relies on the Declaration of Expert Witness Kimberly Cameron (the "Cameron Report") in support of its claim construction and charges of infringement. [ECF No. 45-1]. At the same time, Plaintiff filed motions to exclude testimony of Defendant's expert witnesses, Michel Thorens and Peter Matos. [ECF Nos. 48, 49].

Because the Court found summary judgment premature in advance of claim construction by the Court, it set a Markman Hearing and ordered additional claim construction briefing. [ECF Nos. 68, 73]. On November 10, 2017, Defendant filed its Response to Claim Construction Offered as Part of Plaintiff's Motion for Summary Judgment. [ECF No. 78]. In this response, Defendant relies on the Rebuttal Expert Witness Report by Michel Thorens (the "Thorens

Report") and the Expert Witness Report by Peter Matos (the "Matos Report"). [ECF Nos. 78-1, 78-2]. Plaintiff timely replied with its own claim construction brief. [ECF No. 79].

On December 12, 2017, the Court granted in part and denied in part Plaintiff's Motion to Exclude Expert Testimony by Peter A. Matos, an experienced patent attorney proffered as an expert in patent prosecution, but not in the relevant art of cigar making. [*See* ECF No. 89]. In its Order, the Court noted that it would give no weight to areas of the Matos Report regarding claim construction or prior art, or any testimony thereof, but would allow testimony regarding relevant patent practice and procedure generally.

On December 13, 2017, The Court held a Markman Hearing, wherein the parties presented arguments and expert testimony on the disputed claim terms, prior art, and patent prosecution procedures.

## CLAIM CONSTRUCTION PRINCIPLES

"[T]he role of a district court in construing claims is . . . to give meaning to the limitations actually contained in the claims, informed by the written description, the prosecution history if in evidence, and any relevant extrinsic evidence." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). A court must construe claim terms only "to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chem. Co.,* 642 F.3d 1355, 1361 (Fed. Cir. 2011) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

In claim construction, "the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Phillips*, 415 F.3d at 1313. To determine that meaning, "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Such sources include intrinsic and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. *Id*. at 1314, 1317. "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id* at 1313.

When interpreting any asserted claim, "court[s] should look first to the intrinsic evidence of record," which encompasses "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics*, 90 F.3d at 1583 (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). That is because, "[p]roperly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips,* 415 F.3d at 1321. Thus, the ordinary meaning of a term should not be looked at "in a vacuum," but rather "in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). In that context, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). Yet, "there is a fine line between

reading a claim *in light of* the patent's written description, and reading a limitation into the claim from the written description," which the Court must not do. *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321 (Fed. Cir. 2016); *see also Phillips,* 415 F.3d at 1323–24.

When intrinsic evidence is "insufficient to enable the court to determine the meaning of the asserted claims, . . . extrinsic evidence . . . may also properly be relied on to understand the technology and to construe the claims." *Vitronics*, 90 F.3d at 1584 (citing *Markman,* 52 F.3d at 979). "Extrinsic evidence . . . may be helpful [to ascertain the meaning of a claim term] but is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007) (quoting *Phillips,* 415 F.3d at 1317). Extrinsic evidence is very broad and includes dictionaries, books on the art, expert testimony, and "other material not part of the public record associated with the patent." *Id.* A court may rely on extrinsic evidence only when a claim term is ambiguous and intrinsic evidence does not resolve the ambiguity. *See Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1367 (Fed. Cir. 2003) ("When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained.").

## **CLAIMS AT ISSUE**

### I. The Patents and the Person of Ordinary Skill in the Art

It is undisputed that the claim terms in dispute each appear in several claims of the many Patents at issue and are co-related, stemming from the same parent application. Neither party objects to a consistent construction of the terms across all of the Patents, and both referenced the specifications in the '730 Patent and '858 Patent interchangeably in their claim construction briefs and at the Markman Hearing. Therefore, for purposes of claim construction, the Court will

5

rely on the specification and prosecution history of any and all of the related patents to construe the claim terms at issue. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333–34 (Fed. Cir. 2003) (noting that "prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications" and that when construing a common term in dispute in related patents, the court will "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."); *see also In re Rambus Inc.*, 694 F.3d 42, 48 (Fed. Cir. 2012) (finding support for a broad construction of a claim term by referencing claims in related patents in the patent family).

It is also undisputed that a person of ordinary skill in the art of the Patents here would have at least a high-school education and two years of hand-rolling cigar experience, or the educational equivalent thereof.[1] Therefore, the Court construes all of the claim terms in accordance with what this person of ordinary skill in cigar rolling would have understood those terms to mean at the time of the invention after reading the Patents in their entirety, while keeping the context of their written descriptions and prosecution history in mind, but without limiting claim terms to any particular embodiment. *See generally Phillips,* 415 F.3d 1303.

## II. Claim Terms At Issue

### A. "Shell" and "Tube"

Defendants contend that "shell" and "tube" must have identical constructions because the terms are used interchangeably throughout the written description, drawing, and prosecution history. For instance, the '730 Patent, titled "[c]igar tube," contains various claims with the word "tube" and "cigar tube," but the term does not appear anywhere in the written description of the

---

[1] The parties agreed to this standard during the Markman Hearing, and the Court finds it appropriate.

Patent. During prosecution, Plaintiff indicated that the word "tube" in the claims is illustrated as numeral (10) of the drawings. Matos Report, Ex. C, 2. But the Patent designates that same numeral (10) as "a tobacco product shell of the present invention." '730 Pat., Col. 2, ln. 43–44. In addition, during prosecution Plaintiff referred to sections of the application that discussed the "wrapping and rolling [of] tobacco leaves [to] form a shell of a desired thickness." Matos Report, Ex. C, 2. (referencing what is now '730 Pat., Col. 3, ln. 1–3). From this, Defendant concludes that the definitions of "shell" and "tube" must be the same.

Plaintiff, however, asserts that although it is true that a "tube" is a "shell," it is because "shell" is a collective term that includes, but is not limited to, a "tube." To support this, Plaintiff points to the written description of Patent '858, which indicates that Fig. 25 of the '858 Patent shows packaging that can be used for "any shell embodiment disclosed in this application including shaped tube, slit tube, shaped tube, shell, shaped tube, [and] spiral wrap; all of which embodiments will generically be referred to as a shell." '858 Pat., Col. 12, ln 30–34 (citations omitted). The Court finds this proposition convincing, and thus will not construe the terms to be identical, but instead will treat "tube" as being a particular variant of the more generic term "shell."

    i.    "Shell"

The parties' proposed constructions of the term "shell" are as follows:

**Plaintiff:** an external case or outside covering.

**Defendant:** a specifically sized, shaped and pre-formed receptacle for smoking articles that has and retains the pre-defined and uniform smokable shape that is to be filled and smoked.

Although the '730 and '858 Patents use the term "shell" throughout their specifications, only the '730 Patent has claims that use the term, with two independent claims as follows:

7

**28.** A product including a cigar shell for holding an end user's tobacco fill material, comprising: a sheet of material, the sheet of material being rolled into a shell having a longitudinal axis and edges that are not glued together, enabling the edges to be moved apart to open the shell along the longitudinal axis so that tobacco fill material can be added to the shell to form a cigar; wherein the shell is packaged in packaging and remains rolled inside the packaging; and a casing, the casing resisting collapsing of the shell during shipment.

**30.** A product including a cigar shell for holding an end user's tobacco fill material, comprising: a sheet of material, the sheet of material being rolled into a shell having a longitudinal axis and edges that can be moved apart to open the shell along the longitudinal axis so that tobacco fill material can be added to the shell to form a cigar; wherein the shell is packaged in packaging and remains rolled inside the packaging; a casing, the casing resisting collapsing of the shell during shipment; and wherein the shell is wrapped about the casing.

In the very first line of the invention's "summary" section, the '858 Patent states that "[t]he present invention provides an improved shell for fabricating and making custom made rolls of tobacco such as cigars . . . ." '858 Pat., Col. 2, ln. 13–15. The Patent explains that these shells are made where a "sheet of material is . . . rolled into a tube shaped shell or tube" that is packaged for sale "enabling the end user to add her own favorite tobacco to the tube or shell bore." *Id.* at Col. 2, ln. 17–18, 26–27. It then describes various objects of the invention, "achieved through the provision of a shell that eliminates some steps in the making of a 'roll-your-own' tobacco product." *Id.* at Col. 2, ln. 54–56. During prosecution, Plaintiff explained that "some people make a tobacco shell by opening a cheap cigar and removing the inner layers," but that the "shaped tube or shell of the present invention as claimed comprises a tube or shell which is formed into a tubular shape . . . that enables an end user . . . to add his or her tobacco." [Pl.'s Ex. 1 at 4].[2]

---

[2]  Citations to Plaintiff's Exhibits in this Order refer to the exhibits introduced during the Markman Hearing, which have been docketed collectively. [ECF No. 96].

Notably, both of the above independent claims use the term "shell" only together with the term "casing." In fact, the '730 Patent, titled "[c]igar tube," explains in the abstract of the invention that "[a] tobacco product is formed by rolling moistened tobacco leaves about a cylindrical form casing and allowing the leaves to dry to form a shell." Pat. '730, Abstract. A preferred embodiment of a shell is provided by the Patents, where a shell is formed by selecting an "appropriate form casing . . . from a set of casings," and wrapping and rolling tobacco leaves around this casing "to form a shell of a desired thickness." Pat. '730, Col. 7, ln. 7–19 (citations omitted). This preferred embodiment of the invention is described on all of the Patents with identical language. Defendant looks to the description of this embodiment to narrowly construe the term "shell."

However, Plaintiff correctly asserts that the claim term should not be limited by this preferred embodiment, and asks that the Court give the term its ordinary and customary meaning, rather than an "idiosyncratic" meaning bound to this embodiment. Although the Court agrees, it is not convinced that the ordinary and customary meaning of the word "shell" in the context of the invention is so broad as to mean any "external case or outside covering." Such a construction would be disassociated with the art of cigar making and thus akin to construing the term "in a vacuum." *See Medrad*, 401 F.3d at 1319. Instead, the term should be construed in light of and in the context of the invention. That is, a shell eliminates some steps in the making of a roll-your-own tobacco product. It is not crushed when an unskilled user attempts to form a cigar by adding fill material to it. It does not require the user to have the finger dexterity of a skilled artisan when forming the cigar. One of ordinary skill in the art would then understand the shell in the context of this invention to be one that is pre-formed in such a way that achieves these goals when filled and smoked. Thus, the Court cannot adopt Plaintiff's broad construction.

9

Yet, to take Defendant's construction would also be improper, as it binds the term to an unsupported meaning. Nowhere do the Patents suggest that a shell must "retain[] the pre-defined and uniform smokable shape that is to be filled and smoked," or any shape at all. During the Markman Hearing, Plaintiff's expert, Kimberly Cameron, indicated that the main problem she saw with Defendant's construction was its attempt to add the limitation that the shell "retains" some kind of "uniform" shape. Therefore, it would be inadequate to define the term with this limiting language.

Accordingly, the Court construes "shell" as follows: "a specifically sized, shaped, and pre-formed receptacle for smoking articles."

### ii. "Tube"

The parties' proposed constructions of the term "tube" are as follows:

**Plaintiff:** hollow, elongated cylinder.

**Defendant:** a specifically sized, shaped and pre-formed receptacle for smoking articles that has and retains the pre-defined and uniform smokable shape that is to be filled and smoked.

The Patents consistently describe "tube" as being material of a particular shape that forms the cigar tube. Patent '730 contains several claims, including the ones at issue, that describe the ability to "move apart to open" or "move apart to unroll" the tube "so that tobacco fill material can be added." Pat. '730, Claims 17, 28, 30. The language of independent claim 17 reads:

> **17.** A product including a cigar tube for holding an end user's tobacco fill material, comprising: a cigar tube comprising a sheet of material, the sheet of material being rolled into a tube and having edges that are not glued together, enabling the edges to be moved apart to unroll the tube so that tobacco fill material can be added to the tube; wherein the cigar tube is packaged in packaging and the tube remains rolled in a tube shape inside the packaging after being packaged.

In addition to the above claim language, the Patents refer to the term "tube" as a "shaped tube" in several other claims. Patent '858 also indicates in the invention's summary that "[w]ith the method of the present invention, the tube that is formed preferably has a generally cylindrical shape." '858 Pat., Col. 2, ln. 62–63. Lastly, the drawings of the Patents show tubes formed to a cylindrical shape. Thus, given the claim language, written description, and drawings, one of ordinary skill in the art would read the term "tube" in the context of cigar tubes as a tubular or cylindrical shape to which tobacco fill can be added. Therefore, the Court agrees with Plaintiff's construction that tube is a "hollow, elongated cylinder." The Court also agrees with Plaintiff's assertion that "tube" is a specific instance of the more generic term "shell." Given this assertion, "tube" must be construed as a "shell" in this particular cylindrical shape to which tobacco fill can be added.

Accordingly, the Court construes "tube" as follows: "a shell in a hollow, elongated cylindrical shape."

### B. "Casing"

The parties' proposed constructions of the term "casing" are as follows:

**Plaintiff:** the structure onto which the sheet, shell, or tube is wrapped.

**Defendant:** a rigid, cylindrical mold of predetermined length, shape and outer diameter that molds and maintains the shell/tube in the pre-formed uniform size and shape that is to be filled and smoked.

The term "casing" is found only in claims of Patent '730 and its peers, and only in independent claims 28 and 30 of Patent '730.[3] Notably, the cigar shell appears to have a

---

[3] The language of Claims 28 and 30 is quoted in the earlier discussion of "shell." *See supra* section II.A.i.

relationship to the term "casing" in the context of the invention, as the cigar "shell" term appears only in claims that also include the term "casing." This relationship provides context for interpreting the term "casing."

Defendant asserts that the relationship between "casing" and "shell" is that "the 'casing' is the mold on which the cigar shell is formed." [ECF No. 78, at 11]. It bases this assertion on the premise that Plaintiff defined the term "casing" in its appeal brief during prosecution, by referencing the following language of the '730 Patent:

> A form casing is provided for the practice of the invention. The form casing is formed from a rigid material in a form of a cylinder of a predetermined length and outer diameter. The form casing can be made either hollow, with a central opening, or as a solid body. It is desirable that the form casing be inflexible and strong enough to withstand forces applied to the form casing when a cigar shell is rolled.

'730 Patent, Col. 2, ln. 51–59 (citations omitted). Defendant thus construes "casing" to contain the limitations found in the paragraph above—namely, that the casing must be "rigid," "cylindrical," and a "mold" that provides the shell its initial and final shape. The Court finds some support for this contention, as the term "casing" in the written description of the Patents appears only as part of the term "form casing," and it is this "form casing" that is described by the above embodiment. In the claims, however, the term "casing" appears on its own, and not as a part of "form casing."

Plaintiff's position is that the above language in the written description merely describes the preferred embodiment of the invention, and additional types of "casings" are also described in the Patents, such as "form casings [that are] disposable" or "made of a cardboard material." '730 Pat., Col. 3, ln. 50, 66–67. During the Markman Hearing, Plaintiff indicated that although the "casing" may be used as a "mold," it should not be limited to such use. To support this assertion, Plaintiff cites the appeal brief filed during prosecution to overcome Claim 28's initial

rejection by the PTO Examiner. [Pl.'s Ex. 2 at 4]. The claim was initially rejected as indefinite because the "claimed casing has no structural relationship with the claimed shell . . . ." [*Id.*]; *see also* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). To overcome this initial rejection, Plaintiff argued that the "relationship between the casing and the shell is that of 'resisting collapsing of the shell during shipment.' The casing . . . resists collapsing [and] without the casing the shell . . . would have unwanted bends or folds inhibiting proper future use of the claimed product." [Pl.'s Ex. 2 at 4]. Notably, no mention was made of any relationship where the casing acts as a "form casing" to form or mold the shell.

For further guidance, the Court can also look to the interplay between claims. As explained in *Phillips*, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315 (citing *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)). This presumption is rebutted only by contrary construction in the specification or prosecution history. *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1374 (Fed. Cir. 2014) (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)). Here, the interplay between Claim 31 and Claim 28 of the '730 Patent is clarifying. Claim 31 is dependent on Claim 28, and reads:

**31.** The product of claim 28, wherein the casing is a form casing.

Applying *Phillips*, the Court presumes that the limitation described in Claim 31—that the casing be a "form casing"—is not present in Claim 28. That is, the "casing" of Claim 28 should not be

13

limited to a narrower "form casing." This further supports Plaintiff's assertion that "casing" should not be limited by language in the written description describing a "form casing."

Lastly, during the Markman Hearing the parties disputed whether a "casing" must be "rigid." Defendant pointed to the same language set forth above, where "rigid" is used to describe the "form casing." Plaintiff, however, maintained that although this may be the case in the preferred embodiment, it need not be the case in other embodiments, such as when homogenized paper is wrapped to form the cigar shell. For further clarity, the Court can again look to the appeal brief filed during prosecution. [Pl.'s Ex. 2 at 4]. In its brief, Plaintiff responded to the PTO Examiner's initial rejection of what is now Claim 29 by asserting that the "preventing collapsing [during shipment]" language of Claim 29 is narrower than "resisting collapsing [during shipment]" as specified in what is now independent Claim 28. In other words, although a casing may be strong enough to completely prevent collapsing during shipment, it may alternatively be only so strong as to resist such collapsing. Therefore, importing a limitation that all "casing[s]" must be "rigid" would not only make the word "rigid" superfluous where used, but would also create an irregularity among those claims.

Accordingly, the Court construes "casing" as follows: "the structure onto which the shell is wrapped."

### C. "Unroll"

The parties' proposed constructions of the term "unroll" are as follows:

**Plaintiff:** **to open out from a rolled-up state; to uncoil.**

**Defendant:** **prying open and expanding the slit to provide direct immediate access to the interior of the shell, thus allowing a user to simply drop in the desired fill, and allow the shell to close back into the smoking shape so it can be sealed and smoked.**

The term "unroll" appears only in the '730 Patent, and only in its claims, never in the specification. The term appears in Claims 1, 4, 5, 16, 17, and 22, always in the same context: the claims indicate that the cigar tube's "edges [are] to be moved apart to unroll the tube so that tobacco fill material can be added to the tube."[4]

Defendant argues that "unroll" must mean to "pry open" the edges of the shell, because that is what the preferred embodiment of the invention contemplates. The language of this embodiment explains that "[a]n ultimate user will remove the shell from its outer wrapper . . . and pry the shell open by forcing the shell apart along the slit. The user will then fill the interior opening with any desired blend of the favorite tobacco . . . ." '730 Pat., Col. 3, ln. 28–31 (citations omitted).

However, the summary of the invention explains that this is only one embodiment of the invention and not every possible embodiment. More specifically, the summary indicates that "[i]n *one of* the embodiments, a longitudinal slit is formed through a wall of the shell to allow prying open of the shell body and removal of the form casing." '730 Pat., Col. 2, ln. 21–23 (emphasis added). Thus, claims that use the term "unroll" should not be limited to this embodiment where one fills the shell only by the "prying open of the shell body." In addition, the '858 Patent contains a drawing of a sheet of material that is completely flat, and the written description explains that the figure is of a "shaped tube [that] has been unrolled to a position exposing [its] surface and allowing tobacco filler material to be added along edge." Pat. '858, Col. 9, ln. 39–41. In this embodiment, it would be incoherent to say that the user unrolled the shaped tube by "prying open" the material to a flat sheet.

---

[4]  Claim 17 is the sole claim at issue that contains this term, and its full language is quoted in the earlier discussion of "tube." *See supra* section II.A.ii.

But fully adopting Plaintiff's language would also create an inconsistency between the two embodiments. This is because the term "uncoil" would not best describe the means by which one opens the shell body of the preferred embodiment of the '730 Patent, which is instead unrolled by "forcing the shell apart along the [previously created longitudinal] slit." '730 Pat., Col. 3, ln. 29–30. Therefore, one of ordinary skill in the art would understand "unroll" to encompass embodiments where one fills the shell with tobacco material by either prying open the shell along a slit, or instead by moving apart the edges of a tube to a flat sheet.

Accordingly, the Court construes "unroll" as follows: "to open out from a rolled-up state."

### D. "Edges"

The parties' proposed constructions of the term "edges" are as follows:

**Plaintiff:** **the outside limit of an object, area, or surface.**

**Defendant:** **confronting portions of the shell/tube that are defined by a longitudinal slit cut through the entire thickness of the shell/tube, and when pried apart, expand the slit to provide direct access from the exterior to the interior of the shell/tube.**

Defendant again focuses on the preferred embodiment of the '730 Patent to conclude that "edges" are created "within the wall of the shell body with a sharp knife or razor in order to create structure which extends the entire thickness of the shell/tube and the user can pry open." [ECF No. 78 at 9] (citations omitted). However, in addition to the invention not being limited to this embodiment, there is no indication that the "edges" must be "confronting," or may only be opened by being "pried apart." In fact, these "edges" must continue to exist after one unrolls the shell to a flat sheet of material.

Accordingly, the Court will adopt Plaintiff's proposed construction for "edges."

### E. "Memory"

The parties' proposed constructions of the term "memory" are as follows:

**Plaintiff:** **the tendency or attempt of the sheet, shell, or tube to curve or roll up to return to a tube shape after its edges are moved apart.**

**Defendant:** **a tendency to independently and completely return to a previous shape.**

The term "memory" appears only in the '858 Patent and its peer, the '944 Patent. The term appears in both claims at issue, Claims 1 and 11. Both claims have nearly identical language, with Claim 11 containing the term twice:

> **11.** A method of constructing a cigar tube product comprising the steps of: a) obtaining a sheet that includes tobacco material; b) wherein the sheet is rolled into a shaped tube that has a memory that retains a generally tubular shape and an interior bore, the tube having two edges that can be moved apart so that tobacco fill material can be added to the bore; c) wherein the shaped tube is packaged in a wrapper for sale to a consumer and without filling the tube bore with tobacco fill material; d) wherein the shaped tube of steps "b" and "c" has a memory that retains a tube shape after removal of the shaped tube from the wrapper; and e) removing the packaged shaped tube from the wrapper, and constructing a cigar tube product by separating the two edges and filling the interior bore with tobacco fill material.

The claim itself explains that "memory" helps the tube retain a generally tubular shape. In addition, the parties agree that "memory" helps to limit the dexterity and expertise needed in cigar rolling by assisting an unrolled cigar tube to be rolled back to a smokable shape. However, the parties disagree as to the degree of aid that this "memory" offers. Defendants argue that the material will tend to "completely return to a previous shape," whereas Plaintiff indicates it will instead only tend to or attempt to "curve or roll up to return to a tube shape."

The written description brings some clarity, describing "memory" in various different embodiments. Two embodiments involve a layer of material "having a memory wherein the layer tends to curve." '858 Pat., Col. 3, ln. 58, 65–66. Another two comprise "a sheet of material

having a memory wherein the sheet tends to curve." *Id*. Col. 4, ln. 4–5, 9. In three other embodiments, a "sheet [has] a memory wherein the sheet tends to roll up." *Id*. Col. 4, ln. 18, 26, 44. Finally, one embodiment describes a shaped tube where "the sheet of material has a 'memory' and will attempt to again assume the cylinder shape of tube or spiral wrap after tobacco filler material has been added to surface." *Id*. Col. 9, ln. 43–46 (citations omitted). Notably missing from all these embodiments, or anywhere else in the written description, is a "memory" causing a tendency for the material to "independently and completely" return to a previous shape. Although the Patent explains that the reason the tube's edges come together at the slit of this last embodiment is "due to the memory of the sheet," there is no indication that this is independently and completely achieved by that memory.

Accordingly, the Court will adopt Plaintiff's proposed construction for "memory."

## **CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the claim terms are construed as follows:

1. "Shell" is construed as, "a specifically sized, shaped, and pre-formed receptacle for smoking articles."
2. "Tube" is construed as, "a shell in a hollow, elongated cylindrical shape."
3. "Casing" is construed as, "the structure onto which the shell is wrapped."
4. "Unroll" is construed as, "to open out from a rolled-up state."
5. "Edges" is construed as, "the outside limit of an object, area, or surface."

6. "Memory" is construed as, "the tendency or attempt of the sheet, shell, or tube to curve or roll up to return to a tube shape after its edges are moved apart."

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of January, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE